## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LYN PERALDO, individually and on behalf of all others similarly situated, | ) )  ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| TNOW ENTERTAINMENT GROUP, INC. d/b/a "TicketsNow" and/or "Ticketsnow.com", FIRST15, INC. d/b/a "The Ticket Liquidator" or "theticketliquidator.com" or "First15.com" and JOHN DOE SELLERS 2, et al., | ) ) ) ) ) ) ) | Civil Action No. 1:08 CV 779 |
| Defendants. | ) ) | |

### DEFENDANT TNOW ENTERTAINMENT GROUP, INC.'S
### RESPONSE TO PLAINTIFF'S AND CODEFENDANT FIRST 15, INC.'S
### JOINT OBJECTION TO MEMORANDUM OPINION, ORDER AND
### RECOMMENDATION OF MAGISTRATE JUDGE DIXON

TNOW Entertainment Group, Inc., d/b/a TicketsNow and/or Ticketsnow.com ("TicketsNow"), by its attorneys, submits the following as its response to Plaintiff's and Codefendant First 15, Inc.'s ("First 15") Joint Objection to the Memorandum Opinion, Order and Recommendation of Magistrate Judge Dixon (the "Joint Objection"):

### Introduction

Magistrate Judge Dixon's Memorandum Opinion, Order and Recommendation (the "Order"), sets forth his recommendations on two issues: (1) TicketsNow's Motion for Leave to File a Response in Opposition to Plaintiff's Motion to Remand ("Motion"); and (2) whether this case should be remanded to the state court. Plaintiff and First 15 do not challenge Magistrate Judge Dixon's determination that removal was proper. Instead, Plaintiff offers to "stipulate and agree that the total damages being claimed in this civil action do not exceed five million dollars"

if "appropriate and if permitted by the Court to do so." (Joint Objection, p. 6.) As explained below, such a stipulation is neither appropriate nor should the Court permit it.

The sole basis for the Joint Objection is a mischaracterization of TicketsNow's Motion as an untimely motion for extension of time. However, as Magistrate Judge Dixon correctly found, TicketsNow's Motion was filed in response to Plaintiff's and First 15's attempt "by agreement" between themselves to divest this Court of its subject matter jurisdiction. Their ploy was as follows: if First 15 would join in Plaintiff's Motion to Remand, Plaintiff would dismiss First 15 when the case returned to the state court. First 15 joined in the Motion to Remand and TicketsNow objected. First 15 then filed a "withdrawal" of its Notice of Removal and its opposition to Plaintiff's initial remand motion attempting to undo removal and leave the remand motion unopposed. In response, TicketsNow filed the Motion which is the subject of the Joint Opposition. Seeing through this transparent tactical maneuver, Magistrate Judge Dixon recognized the gamesmanship at play and properly permitted TicketsNow to file its Motion.

### Background Facts

The principal facts giving rise to the issue before this Court began on March 3, 2009, when First 15 joined with Plaintiff in a Joint Motion to Remand this case to the state court (the "Joint Motion") (docket no. 43). In their Joint Motion, and despite First 15's continued contention (even in the Joint Motion) that jurisdiction in federal court is proper under CAFA, they advise the Court that "[a]fter full and frank discussion regarding the appropriateness of federal court jurisdiction over this civil action, Plaintiff and First 15 agree this matter should now be remanded to state court." (Id., ¶4). They don't mention their side deal. TicketsNow promptly filed its Opposition to the Joint Motion (docket no. 45), arguing, among other things, that Plaintiff and First 15 could not agree to divest this Court of its proper subject matter jurisdiction. After First 15 filed its Notice of Withdrawal of its Petition for Removal and its Opposition to

2

Plaintiff's Motion to Remand, TicketsNow sought leave to adopt First 15's prior filed opposition to Plaintiff's motion to remand as its own.

## Standard of Review

The entirety of Magistrate Judge Dixon's Order is subject to review by this Court under the heightened and deferential clearly erroneous or contrary to law standard. While Plaintiff and First 15 admit that Fed. R. Civ. P. 72(a) is applicable to the portion of the Order allowing TicketsNow to adopt the Opposition to Plaintiff's Motion to Remand previously filed by First 15 (Joint Objection, p. 3), they incorrectly contend that Fed. R. Civ. P. 72(b)'s dispositive motion review standard is applicable to that portion of the Order denying the Motion to Remand (Id.). The law in this district and elsewhere is clear – a motion to remand is a non-dispositive matter subject to review by the district court under the heightened clearly erroneous or contrary to law standard. See, Hunsucker v. United Furniture Industries, NC, LLC, 1:05 CV 44, 2005 WL 1114339, *7, n. 3 (M.D.N.C. April 27, 2005) (noting authority of Magistrate Judge to issue an order on remand because a motion for remand is a non-dispositive motion)[1]; Drye v. Bankers Life and Casualty Co., No. 3:05 CV 115-MU, 2006 WL 2077562, *2 (W.D.N.C. July 24, 2006) (motion to remand is a non-dispositive matter which can be determined by a magistrate as a final order, and is "subject only to a 'clearly erroneous or contrary to law' review by the district court"); Wyatt v. Walt Disney World, Co., No. 5:97 CV 116-V, 1999 WL 33117255, *3-4 (W.D.N.C. July 26, 1999) (remand motion is non-dispositive matter subject to review by the district court under a "clearly erroneous standard"). Accordingly, Magistrate Judge Dixon's Order is reviewable by this Court under the clearly erroneous or contrary to law standard of review.

---

[1] Copies of all unpublished opinions cited in this Response have been filed along with the Response.

<u>**Argument**</u>

I. **Once the Matter was Properly Removed to this Court, the Parties Lost Any Power to Strip this Court of its Jurisdiction by Purporting to "Resolve Their Differences as to Federal Court Jurisdiction" or to Stipulate to a Limitation of Damages.**

A. **The Amount in Controversy for Purposes of Jurisdiction is the Amount at Issue on the Day of Removal**

The "[p]ropriety of remand is 'decided on the basis of the record as it stands at the time the petition for removal is filed,'" and once an action is properly removed, a party cannot 'unring the bell' and achieve remand through tactical maneuvering. <u>Robinson v. Holiday Universal, Inc.</u>, Case No. Civ. A. 05-5726, 2006 WL 470592, *3 (E.D. Pa., Feb. 23, 2006) (denying motion to remand sought by plaintiff based upon post-removal change in circumstances of case), <u>citing</u> <u>Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.</u>, 605 F.2d 119, 123 (3d Cir. 1979). The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit ... was removed." <u>Oshana v. Coca-Cola Co.</u>, 472 F.3d 506, 510-11 (7th Cir. 2006). As the Senate Report on CAFA notes,

> The law is clear that, once a federal court properly has jurisdiction over a case removed to federal court, subsequent events generally cannot "oust" the federal court of jurisdiction. While plaintiffs undoubtedly possess some power to seek to avoid federal jurisdiction by defining a proposed class in particular ways, they lose that power once a defendant has properly removed a class action to federal court.

<u>Braud et al. v. Transport Service Co. of Illinois</u>, 445 F.3d 801, 808 (5th Cir. 2006), citing Judiciary Committee Report on Class Action Fairness Act, S. Rep. No. 109-14 (1st Sess. 2005).

A party can neither undo the transformation of a lawsuit nor the jurisdiction that is conferred upon the federal court that occurs with the proper removal of that suit from state to federal court. <u>See</u> <u>Choice Hotels International, Inc. v. Shiv Hospitality, LLC</u>, 491 F.3d 171, 176 (4th Cir. 2007) (Events occurring subsequent to the institution of suit which reduce the amount

4

recoverable below the statutory limit do not oust jurisdiction); Braud, 445 F.3d at 808 (denying motion to remand sought by plaintiff based upon changed circumstances after the removal of the matter to the district court); Dinkel et al. v. General Motors Corp., 400 F. Supp. 2d 289, 294 (D. Me. 2005) (denying motion to remand sought based upon post-removal change in circumstances of case).

**B. Plaintiff's Offered 11th Hour Stipulation is Ineffectual Because It Comes Too Late and It Fails to Limit the Plaintiff's Potential Recovery.**

Plaintiff and First 15 do not challenge Magistrate Judge Dixon's determination that removal was proper and this Court has jurisdiction over this matter. Instead, Plaintiff now offers to "stipulate and agree that the total damages being claimed in this civil action do not exceed five million dollars" if "appropriate and if permitted by the Court to do so." (Joint Objection, p. 6.) The stipulation offered by Plaintiff would be ineffectual for two reasons: (1) it is too late for Plaintiff to stipulate to a limitation of damages in an attempt to strip this Court of its jurisdiction; and (2) even absent this obstacle, the proposed language of the stipulation fails to limit the Plaintiffs' potential recovery to $5 million.

In order to attempt to defeat removal jurisdiction in states (such as North Carolina) where the *ad danum* clause is not legally binding at the time of filing, a plaintiff must, at a minimum, "file a binding stipulation or affidavit with their complaints." Aikens v. Microsoft Corp., 159 Fed. Appx. 471, 2005 WL 3439552, *4 (4th Circuit, December 15, 2005) (emphasis added); See also, Oshana, 472 F.3d at 512 ("Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints") (emphasis added). Plaintiff's belated offer to stipulate to a limitation of damages after filing four amended complaints and after the removal of this matter to this Court simply comes too late.

5

Moreover, Plaintiff's offer to stipulate that "the total damages being claimed in this civil action do not exceed five million dollars," is also insufficient to limit the amount in controversy. A stipulation that the Plaintiff will not seek or claim damages in excess of $5 million does not bar the Plaintiff from *recovering* more than $5 million, and accordingly, such a stipulation is ineffective as a limitation on damages in this action. <u>See</u>, <u>Strawn v. AT&T Mobility LLC</u>, 530 F.3d 293, 295-96 (4th Cir. 2008) (reversing remand order and acknowledging district court's rejection of proposed stipulations as ineffective); <u>Aikens</u>, 2005 WL 3439552, at *4 (affirming denial of motion to remand and dismissing stipulations purporting to limit damages as ineffectual). The Plaintiff and First 15 cannot strip this Court of its proper jurisdiction through Plaintiff's belatedly offered stipulation. Magistrate Judge Dixon's Order finding jurisdiction in this Court is clearly correct, and Plaintiff and First 15 cannot come close to meeting their burden that it is clearly erroneous or contrary to law.

## II.   In Light of Plaintiff's and First 15's Improper Tactical Maneuvering, Magistrate Judge Dixon Correctly Allowed TicketsNow to Adopt First 15's Abandoned Arguments Opposing Remand.

As First 15 stated in its Petition for Removal, it sought TicketsNow's consent to removal (although not required under CAFA), and TicketsNow, in fact, consented to the Petition for Removal. Throughout the process of removal to this Court and briefing on Plaintiff's Motion to Remand, counsel for TicketsNow and First 15 communicated with one another and worked together to support this Court's retention of jurisdiction. By joining the removal petition, TicketsNow was entitled to rely on First 15. It assumed a secondary role allowing First 15's briefs to set forth the arguments in opposition to Plaintiff's Motion to Remand so as not to burden the Court and the parties with unnecessary and duplicative briefing on identical issues. Clearly, the arguments made by First 15 in support of its Petition for Removal and its Opposition

6

to Plaintiff's Motion to Remand, are equally available to TicketsNow as the other defendant in the lawsuit and equally applicable to the claims brought against TicketsNow in this action.

Magistrate Judge Dixon saw through the tactical maneuvering and recognized that "…since TNOW is a named Defendant, it should be given the right to submit its position as to the motion to remand." (Order, p. 5.) His Order allowing TicketsNow's Motion was neither clearly erroneous nor contrary to law – it was exactly right.[2]

WHEREFORE, TicketsNow respectfully requests that this Court overrule the Joint Objection to Memorandum Opinion, Order and Recommendation of Magistrate Judge Dixon and grant such other and further relief as it deems just and proper.

Dated: May 15, 2009.

Respectfully submitted,

/s/ James K. Gardner
James K. Gardner
Sarah G. Malia
NEAL, GERBER & EISENBERG LLP
2 N. LaSalle Street, Suite 1700
Chicago, IL 60602
Telephone: 312-269-8000
Facsimile: 312-269-1747

/s/ J. Mark Sampson
J. Mark Sampson
WOMBLE CARLYLE SANDRIDGE &
RICE, PLLC
300 N. Greene St., Suite 1900
Greensboro, N.C. 27401
Telephone: 336-574-8081
Facsimile: 336-574-4561

---

[2] Plaintiff and First 15 suggest that Magistrate Judge Dixon has not recommended any action on their Joint Motion to Remand (docket no. 43) (Joint Objection, p. 2.) However, it is clear from his Order that the case should not be remanded and that the District Court properly has jurisdiction over this matter. "In allow[ing] TNOW to adopt the brief previously submitted by First15" Magistrate Judge Dixon indicated that he "will consider the arguments made in that brief in determining whether the case should be remanded." (Order, p. 5) (emphasis added). Clearly, the Order addresses the propriety of the remand of the case, generally.

7

# UNPUBLISHED OPINIONS CITED

**H**Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Estelle ROBINSON, et al, Plaintiffs
v.
HOLIDAY UNIVERSAL, INC., et al, Defendants.
**No. Civ.A. 05-5726.**

Feb. 23, 2006.

David A. Searles, Donovan Searles, LLC, Philadelphia, PA, for Plaintiffs.

Albert G. Bixler, Anita J. Murray, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, PA, for Defendants.

*MEMORANDUM AND ORDER*

PRATTER, J.

*1 Plaintiffs, Estelle Robinson and Gene M. Swindell, filed a class action complaint on December 6, 2004 in the Pennsylvania Court of Common Pleas for Philadelphia County against Defendants Holiday Universal, Inc. ("Holiday"), Scandinavian Health Spa, Inc. ("Scandinavian"), and Bally Total Fitness Holding Corporation ("Bally Holding"). Their complaint attacks the health club initiation fees charged by the Defendants. Plaintiffs' action was commenced more than two months before the federal Class Action Fairness Act ("CAFA") became effective on February 18, 2005, and the original Defendants were not entitled to remove the action to federal court pursuant to CAFA's removal provisions. After CAFA became effective, however, the Plaintiffs added an additional defendant, Bally Total Fitness Corporation ("BTFC"), which properly and timely removed the case to federal court pursuant to CAFA. The Plaintiffs subsequently voluntarily dismissed BTFC and now request remand to state court. For the reasons set forth below Plaintiffs' motion to remand is denied.

I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Robinson and Swindell filed a class action

complaint on December 6, 2004 in the Pennsylvania Court of Common Pleas for Philadelphia County, alleging that Defendants Holiday, Scandinavian, and Bally Holding charged and collected grossly excessive initiation fees in violation of the Pennsylvania Health Club Act, 73 PA. CONS.STAT. ANN. § 2161*et seq.,* which regulates health clubs operating within the Commonwealth, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS.STAT. ANN. § 201-1*et seq.,* which prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. The Plaintiffs also articulated claims for unjust enrichment and for declaratory relief.

In Pennsylvania state court, the Plaintiffs requested, and were granted, leave to join Bally Total Fitness Corporation ("BTFC"), a subsidiary of Bally Total Fitness Holding Corporation, as a defendant. Plaintiffs filed their Joinder Complaint adding BTFC as a defendant on September 30, 2005. On October 28, 2005, BTFC filed a timely notice of removal based on the amount in controversy and minimum diversity of citizenship contemplated by CAFA.

Thereafter, Plaintiffs, apparently in an attempt to have the case remanded to state court, voluntarily dismissed defendant BTFC from the case on November 4, 2005, and, on November 10, 2005, Plaintiffs filed here the motion to remand pursuant to 28 U.S.C. § 1447(c). Plaintiffs claim that the dismissal of BTFC as a defendant dissolved the Court's basis for jurisdiction under CAFA because, prior to BTFC's joinder, none of the original Defendants would have been entitled to remove the case under CAFA. Plaintiffs also argue that remand is appropriate due to considerations of judicial economy, fairness, and efficiency.

II. DISCUSSION

A. BTFC Properly Removed Under the Class Action Fairness Act

*2 CAFA "permits defendants to remove certain class actions to federal court if minimal diversity of citizenship exists." *Knudsen v. Liberty Mut. Ins. Co., 411 F.3d 805, 806 (7th Cir.2005)*. Specifically,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

CAFA provides that district courts shall have original jurisdiction over any class actions where: (1) at least one member of the plaintiff class is diverse from any defendant; (2) the aggregate amount in controversy exceeds $5,000,000; and (3) the proposed plaintiffs class contains 100 or more members. 28 U.S.C. § 1332(d)(2)(A), (d)(5). The parties here do not dispute that CAFA's numerosity and amount in controversy requirements met in this case.

CAFA is not retroactive; it only applies to actions commenced after February 18, 2005. Pub.L. 109-2, § 9; Exxon Mobil Corp. v. Allapattah Servs., ---U.S. ---
-, ----, 125 S.Ct. 2611, 2628, 162 L.Ed.2d 502 (2005); Natale v. Pfizer, Inc., 424 F.3d 43, 44 (1st Cir.2005); Bush v. Cheaptickets, Inc., 425 F.3d 683, 684 (9th Cir.2005). Although CAFA does not define when a class action is "commenced," many courts have held that, for CAFA jurisdictional purposes, a class action commences when it begins in state court. Natale, 424 F.3d 43 at 44; Bush, 425 F.3d at 686 ("CAFA's 'commenced' language surely refers to when the action was originally commenced in state court."); Dinkel v. Gen. Motors Corp., No. 05-190-P-H, 2005 U.S. Dist. LEXIS 27237, at *6 (D.Me. Nov.9, 2005). Under the Pennsylvania Rules of Civil Procedure, "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint." Pa.R.C.P. 1007.

When a plaintiff adds a new defendant, a new action is "commenced" for purposes of that defendant. See Adams v. Fed. Materials Co., Inc., No. 5:05-cv-90R, 2005 U.S. Dist. LEXIS 15324, at *13 (W.D.Ky. July 28, 2005) ("Plaintiffs' decision to add ... a defendant presents precisely the situation in which it can be and should be said that a new action has 'commenced' for purposes of removal pursuant to the CAFA."); Schorsch v. Hewlett Packard Co., 417 F.3d 748, 749 (7th Cir.2005) ("[A] defendant added after February 18 could remove because suit against it would have been commenced after the effective date."); Knudsen v. Liberty Mutual Ins. Co., 411 F.3d 805, 807 (7th Cir.2005). As stated in Adams, allowing a newly-added defendant a window of time for exercising its removal rights "is both a logical extension of pre-existing removal practice and in keeping with the general intent of Congress in passing the CAFA-that is, extending the privilege of removal to federal district courts to defendants in large class actions on the basis of minimal diversity." Thus, in

this case, there are two relevant "commencement" dates: (1) December 6, 2004 when the lawsuit was filed against the original three Defendants; and (2) September 30, 2005, when the complaint was filed against BTFC as a new defendant.[FN1] Here, the simple fact of the matter is that the Plaintiffs did not file a complaint against BTFC until September 28, 2005, well after the effective date of CAFA. Thus, for BTFC, the post-CAFA filing of a complaint against it "opened a new window of removal," which it used to timely remove the case.[FN2] Knudsen, 411 F.3d at 807.

> FN1. Plaintiffs assert, without substantial discussion, that the filing of the complaint against BTFC did not "commence" a new action because the joinder of BTFC relates back pursuant to Federal Rule of Civil Procedure 15(c) to the date of the original filing against the three original Defendants. Plaintiffs' joinder complaint added BTFC as a defendant. BTFC, although a wholly owned subsidiary of Bally Holding, is presumed to be a separate entity. Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 643 (3d Cir.1991). Plaintiffs have not proffered any evidence tending to show that BTFC knew or had reason to know that suit would have been brought against it but for a mistake concerning its identity. FED. R. CIV. P. 15(c)(3)(B); see e.g., Fry v. Waste Mgmt., Inc., No. 94-6865, 1995 U.S. Dist. LEXIS 11792, at *3-4 (E.D.Pa. Aug. 11, 1995). There is no indication that Bally Holding participated in any misrepresentations or took advantage of the "technicalities" of pleading to act as a buffer between itself and BTFC. See e.g., Arthur v. Guerdon Indus., Inc., No. 85-244, 1990 U.S. Dist. LEXIS 14042, at *6-7 (D.Del.1990). Mere lack of knowledge of a proper party is not enough under the relation back principle. Olin v. George E. Logue, Inc., 119 F.Supp.2d 464, 473 (M.D.Pa.2000).

> FN2. BTFC first received notice of the action against it on September 28, 2005, when the joinder complaint was filed in the court of common pleas. Accordingly, BTFC was entitled to its own thirty day period for removal. See K.S. v. Sch. Dist. of Phila., No. 05-4916, 2005 U.S. Dist. LEXIS 29470, at

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*9 (E.D.Pa. Nov. 22, 2005); *Harper v. Westfield Apartments,* No. 04-2231, 2005 U.S. Dist. LEXIS 5311, at *4 (E.D.Pa. Mar. 30, 2005). BTFC timely filed its notice of removal on October 28, 2005.

**B. Voluntary Dismissal of BTFC from Lawsuit Does Not Undo Proper Removal**

*3 Plaintiff next argues that, even if the joinder of BTFC constituted a new "commencement" for CAFA purposes, BTFC's dismissal from the case removes the Court's jurisdictional reach entirely. That is, Plaintiffs assert that the case, as it stands now (i.e., after the voluntary dismissal of BTFC) before the Court, was "commenced" against the three remaining defendants well before the effective date of CAFA. Thus, conclude the Plaintiffs, CAFA cannot supply the ground for subject matter jurisdiction because it is not retroactive.

Under CAFA, any single defendant can remove without the consent of the other defendants, and the entire lawsuit is removed, not merely the claims against the removing defendant. Specifically, CAFA provides that "[a] class action may be removed to a district court of the United States ... without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b). It is the entire "action" that is removable, not just the claims against particular defendants. *Dinkel,* 2005 U.S. Dist. LEXIS 27237, at *12. Thus, when BTFC removed the class action to this Court, it removed the entire class action and not just the claims against it.[FN3]

> FN3. This conclusion differs from *Brown v. Kerkhoff,* 2005 U.S. Dist. LEXIS 24346, at *56 (S.D.Iowa Oct. 19, 2005) (holding that addition of removing defendants after effective date of CAFA allowed removal of claims against removal defendants but not original defendants; remanding case after plaintiffs dismissed removal defendants). *See also Dinkel,* 2005 U.S. Dist. LEXIS 27237, at *12 n. 6. The court in *Brown* stated: "Because CAFA is not applicable to [the pre-CAFA defendants], the only way the Court could exercise jurisdiction over them is as pendent parties." The Court finds that this

reasoning is inconsistent with general removal practice as well as the mandates of 28 U.S.C. § 1453(b). Thus, the Court finds unpersuasive the *Brown* court's focus on the inability of the pre-CAFA defendants to remove the action under CAFA rather than the court's subject matter jurisdiction over the entire class action after post-CAFA defendants removed the entire action pursuant to 28 U.S.C. § 1453(b). *See* 28 U.S.C. § 1332(d), 1453(b).

Propriety of remand is "decided[ ] on the basis of the record as it stands at the time the petition for removal is filed." *Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.,* 605 F.2d 119, 123 (3d Cir.1979). Here, as discussed above, BTFC properly removed the entire action to the district court at the time of the filing of the notice of removal because all of the jurisdictional requirements of CAFA were then met: an action was commenced against BTFC after February 18, 2005; minimum diversity was met; the aggregated amount in controversy exceeds $5,000,000; and the proposed plaintiffs class contains more than 100 members. Plaintiffs cannot now "unring the bell" by dismissing the removing defendant, BTFC, (which Plaintiffs themselves brought into the suit) in an attempt to return the lawsuit to its status on December 6, 2004. The Court had subject matter jurisdiction over the action when it was removed on October 28, 2005, and it continues to have subject matter jurisdiction over it now.

Plaintiffs further argue that remand is proper by analogizing this situation to the operation of 28 U.S.C. § 1447(e), which requires courts to remand cases if a post-removal permissive joinder of additional defendants destroys the court's subject matter jurisdiction.[FN4] Plaintiffs argue that this provision shows that the Court must remand once the plaintiff makes a permitted change in the defendant parties that destroys the court's only basis for subject matter jurisdiction. Plaintiffs' reliance on Section 1447(e) is misplaced, however, as there has been no attempted post-removal joinder of additional defendants, nor has the Court's subject matter jurisdiction been destroyed. Section 1447(e) operates to deny a sought-after result to a plaintiff that endeavors to manipulate subject matter jurisdiction by changing the cast of characters. The Court's ruling herein similarly refuses to reward changes.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

FN4. In its entirety, 18 U.S.C. § 1447(e) provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

III. CONCLUSION

*4 For the foregoing reasons, the Court finds that the Defendants have met their burden of showing that removal was proper and the Court has subject matter jurisdiction, and there are no doubts that must be resolved in favor of remand. *Schwartz v. Comcast Corp.,* No. 05-2340, 2005 U.S. Dist. LEXIS 15396, at *14 (E.D.Pa. July 29, 2005). Thus, Plaintiffs' Motion for Remand will be denied. An appropriate Order consistent with this Memorandum follows.

## *ORDER*

AND NOW this 23rd day of February, 2006, upon consideration of Plaintiffs' Motion to Remand (Docket No. 4), Defendants' Response (Docket No. 10), Plaintiffs' Reply (Docket No.11), and Defendants' Sur-Reply (Docket No. 12), it is hereby ORDERED that Plaintiffs' Motion to Remand is DENIED. It is FURTHER ORDERED that Plaintiffs shall file and serve on opposing counsel their Response, if any, to Defendants' Motion to Dismiss (Docket No. 2) no later than twenty-one (21) days from the date of this Order.

E.D.Pa.,2006.
Robinson v. Holiday Universal, Inc.
Not Reported in F.Supp.2d, 2006 WL 470592 (E.D.Pa.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                      Page 1
Not Reported in F.Supp.2d, 2006 WL 2077562 (W.D.N.C.)
(Cite as: 2006 WL 2077562 (W.D.N.C.))

**H**Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina,
Charlotte Division.
Jerry **DRYE**, Plaintiff,
v.
**BANKERS LIFE** AND CASUALTY CO., et al.,
Defendants.
**No. 3:05CV115-MU.**

July 24, 2006.

Julie Hanna Fosbinder, Michel C. Daisley, Wells &
Daisley, Charlotte, NC, for Plaintiff.

Kerry A. Shad, Rosemary G. Kenyon, Jonathan
Travis Hockaday, Smith, Anderson, Blount, Dorsett,
Mitchell & Jernigan, LLP, Raleigh, NC, for Defendants.

ORDER

GRAHAM C. MULLEN, District Judge.

*1 This matter is before the court upon "Defendants'
Objections to the Magistrate Judge's Order of Remand," filed April 13, 2006.

This case has a somewhat unusual procedural history.
This employment action was originally filed in
Mecklenburg County Superior Court, and alleged
several North Carolina common law claims against
Bankers Life, Plaintiff's former employer, and two
individuals. While Bankers Life is a Delaware corporation with its principal place of business in Illinois,
both the Plaintiff and the two individual Defendants
are North Carolina citizens. Upon the Defendants'
motion, the claims against the two individual Defendants were dismissed in state court pursuant to Rule
12(b)(6) of the North Carolina Rules of Civil Procedure on February 28, 2005. The judge, however, allowed the Plaintiff leave to amend his Complaint to
reassert those claims and to further add a claim for
tortious interference with contract against the two
individual defendants. Before Plaintiff could amend
his Complaint, however, Bankers Life filed a Notice
of Removal, alleging the existence of diversity jurisdiction. Unaware that the matter had been removed,
the Plaintiff filed an Amended Complaint in state
court, realleging his claims against the individual
Defendants, but adding substantial factual allegations
in support of them. He also added a tortious interference claim against the two individual Defendants.

In federal court, this case was originally assigned to
United States Magistrate Judge David Keesler. The
Plaintiff filed a Motion to Remand on April 18, 2005,
which Judge Keesler denied. The Plaintiff subsequently amended his Complaint on August 1, 2005,
setting forth all the claims in his State Amended
Complaint. He then filed a Second Motion to Remand and the Defendants filed a Joint Motion to
Dismiss.

On September 26, 2005, the Clerks' Office sent the
parties a Notice of Violation of Local Rule 73.1(A),
which requires that the parties file a Consent to Proceed Before a United States Magistrate Judge form
with each party's first pleading filed in the removed
action. The Notice stated that "Counsel are advised to
proceed to immediately file their consent/refusal
form with the Clerk."Plaintiff immediately thereafter
filed his Consent form to proceed before a United
States Magistrate Judge. Defendants failed to respond
in any way to the Clerk's Notice.

On March 29, 2006, the magistrate entered an Order
ruling on the Plaintiff's Second Motion to Remand. In
so doing, the magistrate judge revisited his earlier
Order denying Plaintiff's first Motion to Remand,
concluding that the first Order was in error, and that
there was no basis for exercising federal jurisdiction
in this case. The magistrate judge then set aside his
Order of July 11, 2005, and granted the Plaintiff's
First Motion to Remand.

Only after this Order was entered did the Defendants
complain that they had never consented to magistrate
jurisdiction. They then filed their "Objections to the
Magistrate Judge's Order of Remand" and this case
was reassigned to the undersigned.

*2 The Magistrate's Act, 28 U.S.C. § 636(b)(1)(A),
provides that a magistrate judge has the authority to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

consider and issue a final order as to any non-dispositive pretrial motion. The rule in this District as well as in many others is that a motion to remand is "non-dispositive" and can therefore be determined by a magistrate judge as a final order pursuant to 28 U.S.C. § 636(b)(1)(A).*See, Wachovia Bank v. Deutsche Bank Trust Co. Americas,* 397 F.Supp.2d 698, 700 (W.D.N.C.2005); *Wyatt v. Walt Disney World, Co.,* No. 5:97CV116-V, 1999 WL 33117255, at *4 (W.D.N.C. July 26, 1999). The remand order does not dispose of the claims or defenses of any party, but merely determines which forum has jurisdiction of the case. It does not resolve the substantive rights and obligations of the parties. *Wyatt,* 1999 WL 33117255, at *4. Since the remand order is non-dispositive, it is subject only to a "clearly erroneous or contrary to law" review by the district court. *Id.*

After reviewing the magistrate's Order of Remand, the court finds that it is not clearly erroneous or contrary to law.

IT IS THEREFORE ORDERED that the Order of Remand entered March 29, 2006 is hereby AFFIRMED and this case is ordered remanded to Mecklenburg County Superior Court.

W.D.N.C.,2006.
Drye v. Bankers Life and Cas. Co.
Not Reported in F.Supp.2d, 2006 WL 2077562 (W.D.N.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 33117255 (W.D.N.C.)
(Cite as: 1999 WL 33117255 (W.D.N.C.))

**H**Only the Westlaw citation is currently available.

United States District Court, W.D. North Carolina.
Dinah **WYATT**, Gary **Wyatt** and Hunter **Wyatt**,
Plaintiffs,
v.
**WALT DISNEY** WORLD, CO., Lake Buena Vista
Communities, Inc. d/b/a Disney's Dixie Landings
Resort, Claim Verification, Inc. and Daniel Keys,
private investigator, Defendants.
No. 5:97CV116-V.

July 26, 1999.

*MEMORANDUM AND ORDER*

VOORHEES, J.

*1 THIS MATTER came before the Court on a No-
tice of Removal filed by Defendants on July 11,
1997, transferring this case from the General Court of
Justice, Superior Court Division, of Wilkes County,
North Carolina. On August 11, 1997, Plaintiffs filed a
motion seeking remand to state court. This motion
was duly referred to the Honorable Magistrate Judge
Carl Horn, III, under standing orders of this Court,
directing that all non-dispositive motions be referred
to a magistrate judge for order and all dispositive
motions be referred for recommendation to the dis-
trict court, as appropriate. 28 U.S.C. § 636(b)(1)(A)
and (B).

On September 12, 1997, Magistrate Judge Horn en-
tered an Order of Remand, returning this case to state
court for lack of federal diversity jurisdiction and
directing that any pending motions be resolved by the
state court. All Defendants seek reconsideration or
reversal of the magistrate judge's order in their "Ob-
jection to Proposed Findings and Recommendations,
or in the Alternative, Notice of Appeal," filed Octo-
ber 3, 1997.

I. FACTUAL AND PROCEDURAL HISTORY

On June 10, 1997, Plaintiffs Dinah Wyatt, Gary
Wyatt and Hunter Wyatt filed a complaint in the
General Court of Justice, Superior Court Division, in

Wilkes County, North Carolina against Defendants
Walt Disney World Co., Inc. ("Disney") Lake Buena
Vista Communities, Inc. ("LBV") d/b/a Disney's
Dixie Landings Resort ("Dixie Landings"), Claim
Verification, Inc. ("CVI"), and Daniel Keys
("Keys"), alleging negligence and other state law
claims based upon injuries Plaintiff Dinah Wyatt
sustained at Dixie Landings when she and her infant
daughter, Hunter Wyatt, were hurled from a tram en
route to their hotel room.[FN1]

> FN1. Specifically, Counts I, II, III, IV, and
> V allege negligence, intentional infliction of
> emotional distress, negligent infliction of
> emotional distress, loss of consortium, and
> punitive damages, respectively.

On July 11, 1997, Defendants filed notice of removal.
On July 30, 1997, Defendants CVI and Keys filed a
motion to drop Keys as a defendant, contending that
Plaintiffs fraudulently joined Keys solely to defeat
diversity jurisdiction in the federal court. On August
21, 1997, Plaintiffs filed a motion to remand this case
to state court, claiming that this Court lacks subject
matter jurisdiction.

Salient facts alleged in the Complaint are as follows:
Plaintiffs are residents of Wilkes County, North
Carolina. (Complaint ¶ 1). In August 1994, Plaintiffs
Gary and Dinah Wyatt took a vacation trip to Walt
Disney World in Florida to celebrate their tenth wed-
ding anniversary with their one year old daughter,
Hunter Wyatt. (*Id.* at ¶ 11). During the family's vaca-
tion, they stayed at a Disney affiliated hotel known as
Disney's Dixie Landings. (*Id.* at ¶ 12). While en route
to their hotel room, Plaintiffs Dinah and Hunter
Wyatt were thrown from a hotel tram which was
traveling at an excessive rate of speed. (*Id.* at ¶¶ 20-
22). In the ensuing fall, Dinah's head hit a stone and
concrete tram path directly and with full force. (*Id.* at
¶ 22). Dinah suffered a serious head injury. (*Id.* at ¶
25-27).

Subsequently, Dinah has suffered neurological prob-
lems as part of a "post-concussion" syndrome. (*Id.* at
¶ 30). Her injuries include residual memory prob-
lems, possibly permanent personality changes, panic
disorder, depression, and anxiety, and an overall de-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 33117255 (W.D.N.C.)
**(Cite as: 1999 WL 33117255 (W.D.N.C.))**

Page 2

cline in cognitive functioning.(*Id.* at ¶¶ 31-34). According to her treating neuropsychologist, Dinah's injury has caused persistent cognitive defects and has resulted in her suffering a neurovegetative condition. (*Id.* at ¶ 34). Dinah has undergone extensive cognitive rehabilitation and psychotherapy regimes, including the use of Prozac and Ritalin to help her cope with her neurological problems and depression. (*Id.* at ¶¶ 35-36).

*2 In December 1996, Plaintiffs' counsel forwarded a series of letters to Defendant Disney notifying it of Dinah's injuries. (*Id.* at ¶ 39). In one of these letters, dated December 3, 1996, Plaintiffs' counsel informed Disney that Dinah was experiencing panic and phobic attacks, depression, post-traumatic stress disorder, and that she was demonstrating signs of an emotional and personality-oriented neurovegetative state. (*Id.*) As a result, Plaintiffs contend that Defendant Disney was on notice of Dinah's physical and psychological condition. (*Id.*). Despite this notice, Defendant Disney hired Daniel Keys (through Defendant CVI) to surveil and investigate Dinah and her family. (*Id.* at ¶ 41). Plaintiffs also claim that Defendants CVI and Keys were charged with notice of Dinah's physical and mental condition when Disney hired CVI to investigate Dinah. (*Id.* at ¶ 65). As of the date Disney hired CVI to investigate Dinah, Plaintiffs had taken no formal legal action against any Defendant.

In February 1997, Defendant Keys shadowed Dinah and young Hunter as they went about their daily routine. (*Id.* at ¶¶ 41-52). On February 20, 1997, Dinah noticed that someone was following her and her daughter. Her husband was out of town. (*Id.* at ¶ 41). After Dinah dropped Hunter off at her parents' home in North Wilkesboro, North Carolina, she noticed someone in a pick-up truck sitting nearby. (*Id.*) Later that same day, Dinah realized that the same truck and the same occupant were still present. (*Id.*) After picking up Hunter, Dinah drove to the North Wilkesboro K-Mart to return a defective Walt Disney film. (*Id.* at ¶ 42). While there, Dinah realized that a stranger was following her and Hunter throughout the store. (*Id.*). The stranger was dressed unseasonably, and shadowed Dinah and Hunter's every move throughout the store, including to the restroom door. (*Id.*). As Dinah and Hunter entered the restroom, Dinah heard the distinctive clicking sound of a camera. (*Id.*). Upon hearing this sound, Dinah turned and saw the stranger shuffling something inside his coat. (*Id.*). When

Dinah and Hunter exited the restroom, the strange man was still there. (*Id.*).

When Dinah realized that the stranger following her and Hunter was the same man she had seen earlier that day, she became frightened and panicked. (*Id.* at ¶ 45). Dinah began to experience a variety of anxieties over the apparent stalker's presence, including the fear that the stalker might be after her daughter, or that this person might try to gain entry to her home. (*Id.*). Because her husband was out of town, Dinah spent the night alone and terrified. (*Id.*).

The next day, Dinah called her parents and related the previous day's events. Dinah's parents told her that neighbors had seen a man fitting the description she had given her parents, taking photographs of persons in the neighborhood.(*Id.*). Dinah's parents also told her that one of the neighbors had called the police. (*Id.*). Later that same day, Dinah went to pick up Hunter at pre-school. (*Id.* at ¶ 47). As Dinah left home, she again noticed the stranger sitting in the same pick-up truck on her street. As a result, she began a series of evasive maneuvers to try to escape from the stranger's presence.(*Id.*). Dinah then called her father from her cellular phone and told him that this man was following and that she was frightened. (*Id.*). After picking Hunter up from pre-school, Dinah spotted the stranger parked near the school. (*Id.* at ¶ 49). Dinah asked her father to protect Hunter while she called 911. (*Id.*).

*3 As Dinah exited her vehicle and approached the stranger's truck, her father told her that the man was again taking pictures of her. Dinah approached the stranger's truck and asked him to identify himself and tell her why he had been following her. (*Id.* at ¶ 50). The stranger refused to identify himself and told Dinah that he did not know what she was talking about. (*Id.*). Soon thereafter, a Wilkes County Sheriff's Deputy arrived on the scene and asked the stranger to identify himself. The man refused to answer in the presence of Dinah or her father. (*Id.*). The deputy eventually determined that the stranger was a private investigator named Daniel Keys. (*Id.* at ¶ 51). Keys never apologized to Dinah or offered any explanation for his threatening behavior. (*Id.*).

As a result of Defendant Keys' actions, Plaintiffs allege that Dinah's psychological condition has deteriorated and that her rehabilitative progress has been

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

stunted. In addition, Plaintiffs claim that Dinah has been unable to sleep, has experienced an increase in anxiety, and is now reluctant to be left at home alone or in unprotected public areas. (*Id.* at ¶ 52).

## II. DISCUSSION

### A. Authority of Magistrate Judge to Issue Remand Order

The Magistrate's Act provides in relevant part that:

[A] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, or to dismiss or quash an indictment or information made by the defendant or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

28 U.S.C. § 636(b)(1)(A).*See also* Rule 72.1 of the Local Rules of Civil Procedure for the Western District of North Carolina (permitting a magistrate judge to hear and decide non-dispositive motions "as provided by 28 U.S.C. § 636(b)(1)(A")).

In essence, the Magistrates Act permits a magistrate judge to issue a final order deciding any non-dispositive pretrial motion. However, where a motion is dispositive, the Magistrates Act permits a magistrate judge to "conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations" for the disposition of the motion. 28 U.S.C. § 636(b)(1)(B). The legislative history of the Magistrates Act provides some guidance in clarifying the scope of a magistrate judge's decision-making authority by providing that, "Congress intends that the magistrate shall have the power to make a determination of any pretrial matter (except the enumerated dispositive motions)." H.R. 1609, 94th Cong. (1976).

Accordingly, Magistrate Judge Horn's authority to enter a final order on a motion to remand depends upon whether a motion to remand is "dispositive" or

"non-dispositive" motion. Although no federal appellate court has squarely addressed this issue, the vast majority of the district courts have held that a motion to remand is "non-dispositive" and, therefore, can be determined by a magistrate judge by final order in accordance with 28 U.S.C. § 636(b)(1)(A).*See,e.g., Campbell v. Int'l Business Machines,* 912 F.Supp. 116 (D.N.J.1996); *North Jersey Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland,* 125 F.R.D. 96 (D.N.J.1988); *MacLeod v. Dalkon Shield Claimants Trust,* 886 F.Supp. 16 (D.Or.1995); *Vaquillas Ranch Co., Ltd. v. Texaco Exploration and Production, Inc.,* 844 F.Supp. 1156 (S.D. Tex. 19940; *Banbury v. Omnitrition Int'l, Inc.,* 818 F.Supp. 276 (D.Minn.1993).*But see Giangola v. Walt Disney World Co.,* 753 F.Supp. 148 (D.N.J.1990); *Long v. Lockheed Missiles and Space Co., Inc.,* 783 F.Supp. 249 (D.S.C.1992).

*4 The courts which have held that a remand order is a "non-dispositive" pretrial order have noted that remand orders are not among those orders specifically enumerated in 28 U.S.C. § 636(b)(1)(A) that a magistrate judge is without the authority to issue. *See Campbell,* 912 F.Supp. at 119; *North Jersey Sav. & Loan,* 125 F.R.D. at 98. Because Congress's intention in enacting the Magistrates Act was to empower a magistrate judge to issue a final order in any pretrial matter except the enumerated dispositive motions, this Court finds that the non-inclusion of motions to remand from the language of § 636(b)(1)(A) supports the holding that a remand order is non-dispositive.

Aside from the exclusion of a remand order from § 636(b)(1)(A)'s list of dispositive motions, the language contained in Fed.R.Civ.P. 72(a) is also illuminating as to the proper characterization of a remand order. Rule 72(a) provides that a magistrate judge may enter any final order which is "not dispositive of a claim or defense of a party."It is clear that a remand order is not an order which disposes of any claim or defense of a party. A remand order "merely transfer[s] the action to a different forum rather than finally resolving the substantive rights and obligations of the parties." *Campbell,* 912 F.Supp. at 119. Indeed, "a motion to remand does not reach the merits of the underlying dispute but instead decides only the question of whether removal to the federal court was proper ." *City of Jackson, Mississippi v. Lakeland Lounge of Jackson, Inc .,* 147 F.R.D. 122, 124 (S.D.Miss.1993). After the disposition of a motion to

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

remand, "[t]he parties remain free to litigate the merits of the case ... whether in state or federal court."*Id.*

For these reasons, this Court concludes that a remand order is a "non-dispositive" order. Accordingly, pursuant to § 636(b)(1)(A), Magistrate Judge Horn had the authority to issue a final order resolving Plaintiffs' motion to remand.

### B. This Court's Authority to Review Magistrate Judge Horn's Remand Order

Having concluded that Magistrate Judge Horn acted within the scope of his authority in issuing the Order of Remand filed September 12, 1997, this Court must determine whether it has the authority to review his order. Ordinarily, "a district court reviews the non-dispositive order of a magistrate judge for legal error or clearly erroneous findings of fact." *Campbell,* 912 F.Supp. at 119;*seealso*28 U.S.C. § 636(b)(1)(A). However, as observed by the Court in *Campbell,* a "review of a remand order presents an unusual wrinkle since Congress has decided that '[a]n order remanding a case to the State court ... is not reviewable on appeal or otherwise,' with certain limited exceptions not relevant to this discussion."*Id.* (citing 28 U.S.C. § 1447).[FN2] Indeed, "[w]here the remand decision was predicated on the perceived lack of jurisdiction in the federal court, the Supreme Court ... [has] interpreted Section 1447 to bar appellate review of even the most erroneous remand orders."*Id.* (citing *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336 (1976).

> FN2.Section 1447 provides in relevant part that an order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [related to civil rights cases] shall be reviewable by appeal or otherwise.

*5 Therefore, when read in isolation, Section 1447 appears to divest this Court of the power to review Magistrate Judge Horn's remand order. The Magistrates Act, however, provides for the appeal of non-dispositive orders of a magistrate judge, "notwithstanding any provision of law to the contrary."28 U.S.C. § 636(b)(1). Recognizing this apparent inconsistency between the language of the Removal Act and the Magistrates Act, in *North Jersey Sav. & Loan Ass'n,* 125 F.R.D. at 99, the Court sought to harmonize the two provisions. In doing so, the Court first explained that the current version of § 636(b) was adopted by Congress in an amendment to the Magistrates Act in 1976, and the relevant provision of the Removal Act, § 1447(d), was enacted in 1949.*Id.* at 98 n.1. The court then stated:

Congress knew of the Removal Act's prohibition on review when it added this broadly pre-emptive language [in the Magistrates Act]. Since Congress apparently chose not to exempt the Removal Act from the review provision of § 636(b)(1)(A), this Court concludes that a magistrate's remand order under § 1447 is subject to review by the district court.

*Id.* In other words, the court concluded that because the Magistrates Act was amended after the Removal Act was enacted, and without any reference to the Removal Act, the language of § 636(b)(1) trumped that of § 1447. Likewise, this Court concludes that a district court's power to hear an appeal of a magistrate judge's decision on a motion to remand under § 636(b)(1)(A) is not limited by § 1447.

A court's power to hear an appeal may be negated, however, by a jurisdictional infirmity which defeats its subject matter jurisdiction. Therefore, this Court's conclusion that it has the power to hear an appeal of a magistrate judge's remand order, notwithstanding the language of § 1447, does not end this Court's inquiry in the present appeal.

It is well established that once the clerk mails a certified copy of a remand order to the state court, the district court is divested of jurisdiction and can take no further action on the case, even if the court later determines that remand was erroneous. *See Three J. Farms, Inc. v. Alton Box Board Co.,* 609 F.2d 112, 115 (4 [th] Cir.1979); *New Orleans v. Pub. Serv., Inc. v. Majoue,* 802 F.2d 166, 167 (5 [th] Cir.1986) (per curiam); *Browning v. Navarro,* 743 F.2d 1069, 1078-79 (5 [th] Cir.1984); *Hunt v. Acromed Corp.,* 961 F.2d 1079, 1081-82 (3 [rd] Cir.1992); *Seedman v. United States Dist. Court,* 837 F.2d 413, 414 (9 [th] Cir.1988). Even in cases where the court clerk mailed a certified copy of a magistrate judge's remand order to the state court prior to the district court's review of that order, courts have held that the clerk's act terminated the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

jurisdiction of the district court. *See Campbell, 912 F.Supp. at 120; Tinkham v. Mass Mutual Life, No. 96-2058, 1996 WL 673527 (D.N.J. Sept. 25, 1996)* (Wolin, J.); *Weinberg v. Sprint Corp.,* No. 96-354, 1996 WL 673501 (D.N.J. May 23, 1996)* (Wolin, J.).

**\*6** Likewise, although the court in *City of Jackson, 147 F.R.D. at 125,* recognized that the court clerk's erroneous sending of the certified copy of the magistrate judge's remand order effectively denied the defendant the right to a review of the magistrate judge's order guaranteed by Fed.R.Civ.P. 72(a), the court held that it was "without jurisdiction to remedy this error."*Id.Seealso MacLeod,* 886 F.Supp. at 19 ("[T]he event that divests the district court of jurisdiction is the mailing of the certified copy of the order of remand to the clerk of the state court.").

While this rule "seems to accord determinative weight to the ministerial act of mailing the order to the Superior Court," it also, as observed by the *Campbell* court, is "designed to establish a determinable jurisdictional event after which the state court can resume sole control over a case." *Campbell, 912 F.Supp. at 120.* Indeed, at least one Circuit Court of Appeals has endorsed such a bright-line rule as "prevent[ing] delay in the trial of remanded cases by avoiding protracted litigation of jurisdictional issues." *Hunt v. Acromed Corp.,* 961 F.2d 1079 (3 rd Cir.1992).

Accordingly, notwithstanding the general ability of a district court to review a magistrate judge's decision under § 636(b)(1), certification by the clerk of the order of the magistrate judge returned this case to the state court and "this Court has no power to retrieve it." *City of Jackson,* 147 F.R.D. at 125.* Although certification in this case was unquestionably premature and improper, the act nevertheless divested this Court of jurisdiction. *See Three J. Farms, Inc. v. Alton Box Board Co.,* 609 F.2d 112, 115 (4 th Cir.1979) (noting that entry of an order of remand divests the district court of all jurisdiction and precludes it from entertaining any further proceedings of any character). Because this Court no longer has jurisdiction over this action, it must deny Defendants' Objection/Notice of Appeal.

Nonetheless, were this Court vested with jurisdiction, it would conclude that the magistrate judge's "Order of Remand" filed September 12, 1997, contains no legal error and is not "clearly erroneous." 28 U.S.C. § 636(b)(1)(A). Moreover, if the magistrate's order more properly partook of the nature of a Memorandum and Recommendation to this Court, this Court would affirm and does hereby affirm said order, for the reasons stated therein.

### III. ORDER

IT IS, THEREFORE, ORDERED that Defendants' Objection to the Recommendation of the magistrate judge or, in the alternative, Notice of Appeal (doc. 17) is hereby DISMISSED for lack of merit and jurisdiction.

IT IS FURTHER ORDERED that this case is REMANDED to the General Court of Justice, Superior Court Division, of Wilkes County, North Carolina, for all purposes and future proceedings.

IT IS FURTHER ORDERED that, in all future cases, the Clerk shall not certify a remand order entered by the magistrate judge until after the expiration of the ten-day period provided by Rule 72(a) for the filing of objections to the remand order. If the parties fail to object within that time period, then the Clerk shall certify to the state court the order of the magistrate judge. If a party makes timely objections and the Court denies the objections and orders remand, then the Clerk shall certify the order of the district court to the state court.

**\*7** IT IS FURTHER ORDERED that the Clerk certify copies of this Order to Magistrate Judge Horn, the Clerk of Court for the Western District of North Carolina, and to the Clerk of Superior Court for Wilkes County, North Carolina.

W.D.N.C.,1999.
Wyatt v. Walt Disney World, Co.
Not Reported in F.Supp.2d, 1999 WL 33117255 (W.D.N.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 470592 (E.D.Pa.)
(Cite as: 2006 WL 470592 (E.D.Pa.))

**H**Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
Estelle ROBINSON, et al, Plaintiffs
v.
HOLIDAY UNIVERSAL, INC., et al, Defendants.
**No. Civ.A. 05-5726.**

Feb. 23, 2006.

David A. Searles, Donovan Searles, LLC, Philadel-
phia, PA, for Plaintiffs.

Albert G. Bixler, Anita J. Murray, Eckert Seamans
Cherin & Mellott, LLC, Philadelphia, PA, for Defen-
dants.

*MEMORANDUM AND ORDER*

PRATTER, J.

*1 Plaintiffs, Estelle Robinson and Gene M. Swin-
dell, filed a class action complaint on December 6,
2004 in the Pennsylvania Court of Common Pleas for
Philadelphia County against Defendants Holiday
Universal, Inc. ("Holiday"), Scandinavian Health
Spa, Inc. ("Scandinavian"), and Bally Total Fitness
Holding Corporation ("Bally Holding"). Their com-
plaint attacks the health club initiation fees charged
by the Defendants. Plaintiffs' action was commenced
more than two months before the federal Class Ac-
tion Fairness Act ("CAFA") became effective on
February 18, 2005, and the original Defendants were
not entitled to remove the action to federal court pur-
suant to CAFA's removal provisions. After CAFA
became effective, however, the Plaintiffs added an
additional defendant, Bally Total Fitness Corporation
("BTFC"), which properly and timely removed the
case to federal court pursuant to CAFA. The Plain-
tiffs subsequently voluntarily dismissed BTFC and
now request remand to state court. For the reasons set
forth below Plaintiffs' motion to remand is denied.

I. FACTS AND PROCEDURAL HISTORY

Plaintiffs Robinson and Swindell filed a class action

complaint on December 6, 2004 in the Pennsylvania
Court of Common Pleas for Philadelphia County,
alleging that Defendants Holiday, Scandinavian, and
Bally Holding charged and collected grossly exces-
sive initiation fees in violation of the Pennsylvania
Health Club Act, 73 PA. CONS.STAT. ANN. §
2161*et seq.,* which regulates health clubs operating
within the Commonwealth, and the Pennsylvania
Unfair Trade Practices and Consumer Protection
Law, 73 PA. CONS.STAT. ANN. § 201-1*et seq.,*
which prohibits unfair or deceptive acts or practices
in the conduct of any trade or commerce. The Plain-
tiffs also articulated claims for unjust enrichment and
for declaratory relief.

In Pennsylvania state court, the Plaintiffs requested,
and were granted, leave to join Bally Total Fitness
Corporation ("BTFC"), a subsidiary of Bally Total
Fitness Holding Corporation, as a defendant. Plain-
tiffs filed their Joinder Complaint adding BTFC as a
defendant on September 30, 2005. On October 28,
2005, BTFC filed a timely notice of removal based
on the amount in controversy and minimum diversity
of citizenship contemplated by CAFA.

Thereafter, Plaintiffs, apparently in an attempt to
have the case remanded to state court, voluntarily
dismissed defendant BTFC from the case on Novem-
ber 4, 2005, and, on November 10, 2005, Plaintiffs
filed here the motion to remand pursuant to 28 U.S.C.
§ 1447(c). Plaintiffs claim that the dismissal of BTFC
as a defendant dissolved the Court's basis for jurisdic-
tion under CAFA because, prior to BTFC's joinder,
none of the original Defendants would have been
entitled to remove the case under CAFA. Plaintiffs
also argue that remand is appropriate due to consid-
erations of judicial economy, fairness, and efficiency.

II. DISCUSSION

A. BTFC Properly Removed Under the Class Action
Fairness Act

*2 CAFA "permits defendants to remove certain
class actions to federal court if minimal diversity of
citizenship exists." *Knudsen v. Liberty Mut. Ins. Co.,*
411 F.3d 805, 806 (7th Cir.2005). Specifically,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

CAFA provides that district courts shall have original jurisdiction over any class actions where: (1) at least one member of the plaintiff class is diverse from any defendant; (2) the aggregate amount in controversy exceeds $5,000,000; and (3) the proposed plaintiffs class contains 100 or more members. 28 U.S.C. § 1332(d)(2)(A), (d)(5). The parties here do not dispute that CAFA's numerosity and amount in controversy requirements are met in this case.

CAFA is not retroactive; it only applies to actions commenced after February 18, 2005. Pub.L. 109-2, § 9; Exxon Mobil Corp. v. Allapattah Servs., ---U.S. ---
-, ----, 125 S.Ct. 2611, 2628, 162 L.Ed.2d 502 (2005); Natale v. Pfizer, Inc., 424 F.3d 43, 44 (1st Cir.2005); Bush v. Cheaptickets, Inc., 425 F.3d 683, 684 (9th Cir.2005). Although CAFA does not define when a class action is "commenced," many courts have held that, for CAFA jurisdictional purposes, a class action commences when it begins in state court. Natale, 424 F.3d 43 at 44; Bush, 425 F.3d at 686 ("CAFA's 'commenced' language surely refers to when the action was originally commenced in state court."); Dinkel v. Gen. Motors Corp., No. 05-190-P-H, 2005 U.S. Dist. LEXIS 27237, at *6 (D.Me. Nov.9, 2005). Under the Pennsylvania Rules of Civil Procedure, "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint." Pa.R.C.P. 1007.

When a plaintiff adds a new defendant, a new action is "commenced" for purposes of that defendant. See Adams v. Fed. Materials Co., Inc., No. 5:05-cv-90R, 2005 U.S. Dist. LEXIS 15324, at *13 (W.D.Ky. July 28, 2005) ("Plaintiffs' decision to add ... a defendant presents precisely the situation in which it can be and should be said that a new action has 'commenced' for purposes of removal pursuant to the CAFA."); Schorsch v. Hewlett Packard Co., 417 F.3d 748, 749 (7th Cir.2005) ("[A] defendant added after February 18 could remove because suit against it would have been commenced after the effective date."); Knudsen v. Liberty Mutual Ins. Co., 411 F.3d 805, 807 (7th Cir.2005). As stated in Adams, allowing a newly-added defendant a window of time for exercising its removal rights "is both a logical extension of pre-existing removal practice and in keeping with the general intent of Congress in passing the CAFA-that is, extending the privilege of removal to federal district courts to defendants in large class actions on the basis of minimal diversity." Thus, in

this case, there are two relevant "commencement" dates: (1) December 6, 2004 when the lawsuit was filed against the original three Defendants; and (2) September 30, 2005, when the complaint was filed against BTFC as a new defendant.[FN1] Here, the simple fact of the matter is that the Plaintiffs did not file a complaint against BTFC until September 28, 2005, well after the effective date of CAFA. Thus, for BTFC, the post-CAFA filing of a complaint against it "opened a new window of removal," which it used to timely remove the case.[FN2] Knudsen, 411 F.3d at 807.

FN1. Plaintiffs assert, without substantial discussion, that the filing of the complaint against BTFC did not "commence" a new action because the joinder of BTFC relates back pursuant to Federal Rule of Civil Procedure 15(c) to the date of the original filing against the three original Defendants. Plaintiffs' joinder complaint added BTFC as a defendant. BTFC, although a wholly owned subsidiary of Bally Holding, is presumed to be a separate entity. Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 643 (3d Cir.1991). Plaintiffs have not proffered any evidence tending to show that BTFC knew or had reason to know that suit would have been brought against it but for a mistake concerning its identity. FED. R. CIV. P. 15(c)(3)(B); see e.g., Fry v. Waste Mgmt., Inc., No. 94-6865, 1995 U.S. Dist. LEXIS 11792, at *3-4 (E.D.Pa. Aug. 11, 1995). There is no indication that Bally Holding participated in any misrepresentations or took advantage of the "technicalities" of pleading to act as a buffer between itself and BTFC. See e.g., Arthur v. Guerdon Indus., Inc., No. 85-244, 1990 U.S. Dist. LEXIS 14042, at *6-7 (D.Del.1990). Mere lack of knowledge of a proper party is not enough under the relation back principle. Olin v. George E. Logue, Inc., 119 F.Supp.2d 464, 473 (M.D.Pa.2000).

FN2. BTFC first received notice of the action against it on September 28, 2005, when the joinder complaint was filed in the court of common pleas. Accordingly, BTFC was entitled to its own thirty day period for removal. See K.S. v. Sch. Dist. of Phila., No. 05-4916, 2005 U.S. Dist. LEXIS 29470, at

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*9 (E.D.Pa. Nov. 22, 2005); *Harper v. West-field Apartments,* No. 04-2231, 2005 U.S. Dist. LEXIS 5311, at *4 (E.D.Pa. Mar. 30, 2005). BTFC timely filed its notice of removal on October 28, 2005.

**B. Voluntary Dismissal of BTFC from Lawsuit Does Not Undo Proper Removal**

*3 Plaintiff next argues that, even if the joinder of BTFC constituted a new "commencement" for CAFA purposes, BTFC's dismissal from the case removes the Court's jurisdictional reach entirely. That is, Plaintiffs assert that the case, as it stands now (i.e., after the voluntary dismissal of BTFC) before the Court, was "commenced" against the three remaining defendants well before the effective date of CAFA. Thus, conclude the Plaintiffs, CAFA cannot supply the ground for subject matter jurisdiction because it is not retroactive.

Under CAFA, any single defendant can remove without the consent of the other defendants, and the entire lawsuit is removed, not merely the claims against the removing defendant. Specifically, CAFA provides that "[a] class action may be removed to a district court of the United States ... without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b). It is the entire "action" that is removable, not just the claims against particular defendants. *Dinkel,* 2005 U.S. Dist. LEXIS 27237, at *12. Thus, when BTFC removed the class action to this Court, it removed the entire class action and not just the claims against it. [FN3]

FN3. This conclusion differs from *Brown v. Kerkhoff,* 2005 U.S. Dist. LEXIS 24346, at *56 (S.D.Iowa Oct. 19, 2005) (holding that addition of removing defendants after effective date of CAFA allowed removal of claims against removal defendants but not original defendants; remanding case after plaintiffs dismissed removal defendants). *See also Dinkel,* 2005 U.S. Dist. LEXIS 27237, at *12 n. 6. The court in *Brown* stated: "Because CAFA is not applicable to [the pre-CAFA defendants], the only way the Court could exercise jurisdiction over them is as pendant parties." The Court finds that this

reasoning is inconsistent with general removal practice as well as the mandates of 28 U.S.C. § 1453(b). Thus, the Court finds unpersuasive the *Brown* court's focus on the inability of the pre-CAFA defendants to remove the action under CAFA rather than the court's subject matter jurisdiction over the entire class action after post-CAFA defendants removed the entire action pursuant to 28 U.S.C. § 1453(b). *See* 28 U.S.C. § 1332(d), 1453(b).

Propriety of remand is "decided[ ] on the basis of the record as it stands at the time the petition for removal is filed." *Westmoreland Hosp. Ass'n v. Blue Cross of W. Pa.,* 605 F.2d 119, 123 (3d Cir.1979). Here, as discussed above, BTFC properly removed the entire action to the district court at the time of the filing of the notice of removal because all of the jurisdictional requirements of CAFA were then met: an action was commenced against BTFC after February 18, 2005; minimum diversity was met; the aggregated amount in controversy exceeds $5,000,000; and the proposed plaintiffs class contains more than 100 members. Plaintiffs cannot now "unring the bell" by dismissing the removing defendant, BTFC, (which Plaintiffs themselves brought into the suit) in an attempt to return the lawsuit to its status on December 6, 2004. The Court had subject matter jurisdiction over the action when it was removed on October 28, 2005, and it continues to have subject matter jurisdiction over it now.

Plaintiffs further argue that remand is proper by analogizing this situation to the operation of 28 U.S.C. § 1447(e), which requires courts to remand cases if a post-removal permissive joinder of additional defendants destroys the court's subject matter jurisdiction. [FN4] Plaintiffs argue that this provision shows that the Court must remand once the plaintiff makes a permitted change in the defendant parties that destroys the court's only basis for subject matter jurisdiction. Plaintiffs' reliance on Section 1447(e) is misplaced, however, as there has been no attempted post-removal joinder of additional defendants, nor has the Court's subject matter jurisdiction been destroyed. Section 1447(e) operates to deny a sought-after result to a plaintiff that endeavors to manipulate subject matter jurisdiction by changing the cast of characters. The Court's ruling herein similarly refuses to reward changes.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

159 Fed.Appx. 471                                                         Page 1
159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)), 2005-2 Trade Cases P 75,063
**(Not Selected for publication in the Federal Reporter)**
  **(Cite as: 159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)))**

**C**This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Cynthia M. AIKENS; Jacqueline Belfield; Amber Cisney, Plaintiffs-Appellants,
v.
MICROSOFT CORPORATION, Defendant-Appellee.
**No. 05-1013.**

Argued Sept. 20, 2005.
Decided Dec. 15, 2005.

**Background:** Indirect purchasers of computer operating systems sued manufacturer in state court for antitrust and other state law violations. Manufacturer removed suit to federal court, had it consolidated with other multidistrict litigation, and moved to dismiss. The United States District Court for the District of Maryland, J. Frederick Motz, J., dismissed state law claims, and purchasers appealed.

**Holdings:** The Court of Appeals held that:
(1) court had diversity jurisdiction;
(2) complaint failed to state claim for unjust enrichment;
(3) complaint failed to state claim for bad faith breach of contract;
(4) complaint failed to state claim for misrepresentation; and
(5) complaint failed to state claim for redhibitory defect.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ☜338**

170B Federal Courts
    170BV Amount or Value in Controversy Affecting Jurisdiction
        170Bk336 Matter in Dispute and Amount or Value Claimed or Involved
            170Bk338 k. Interest and Costs; Attorney Fees. Most Cited Cases

**Federal Courts 170B ☜346**

170B Federal Courts
    170BV Amount or Value in Controversy Affecting Jurisdiction
        170Bk344 Aggregation or Joinder of Claims or Demands
            170Bk346 k. Representative or Class Actions. Most Cited Cases
Class action antitrust claims against manufacturer of computer operating systems satisfied amount in controversy requirement for diversity jurisdiction, even though class representatives had contended that they were not seeking recoveries in excess of $75,000 per class member; attorney fees which, under applicable Louisiana law, would be awarded entirely to class representatives, would easily exceed $75,000, and representatives had not stipulated to receipt of lower amount. 28 U.S.C.A. § 1332; LSA-C.C.P. arts. 595(A), 862.

**[2] Antitrust and Trade Regulation 29T ☜967**

29T Antitrust and Trade Regulation
    29TXVII Antitrust Actions, Proceedings, and Enforcement
        29TXVII(B) Actions
            29Tk959 Right of Action; Persons Entitled to Sue; Standing; Parties
                29Tk967 k. Indirect Purchasers. Most Cited Cases
    (Formerly 265k28(1.6))
Under Louisiana law, indirect purchasers of computer operating systems could not employ subsidiary unjust enrichment claim to circumvent rule barring them from recovering monetary damages for manufacturer's alleged antitrust violations. LSA-C.C. art. 2298.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**[3] Sales 343 ⚖411**

343 Sales
    343VIII Remedies of Buyer
        343VIII(C) Actions for Breach of Contract
            343k410 Pleading
                343k411 k. Declaration, Complaint, or
Petition. Most Cited Cases
Under Louisiana law, indirect purchasers' complaint
against computer operating system manufacturer
failed to state claim for bad faith breach of contract;
even if manufacturer's end-user software licensing
agreement constituted contract between parties, com-
plaint lacked any factual allegations regarding how
agreement had been breach, or how manufacturer had
acted with sinister or morally questionable motives.
LSA-C.C. art. 1997.

**[4] Fraud 184 ⚖13(3)**

184 Fraud
    184I Deception Constituting Fraud, and Liability
Therefor
        184k8 Fraudulent Representations
            184k13 Falsity and Knowledge Thereof
                184k13(3) k. Statements Recklessly
Made; Negligent Misrepresentation. Most Cited
Cases
Under Louisiana law, indirect purchasers' complaint
against computer operating system manufacturer
failed to state claim for negligent or fraudulent mis-
representation; complaint failed to assert facts that
would give rise to legal duty on the part of manufac-
turer to supply correct information regarding incom-
patibility of its software with third-party applications.

**[5] Sales 343 ⚖119**

343 Sales
    343III Modification or Rescission of Contract
        343III(C) Rescission or Revocation of Accep-
tance by Buyer
            343k112 Right to Rescind
                343k119 k. Defect in Quantity or Qual-
ity of Goods. Most Cited Cases
Under Louisiana law, indirect purchasers' complaint
against computer operating system manufacturer
failed to state claim for redhibitory defect; manufac-
turer's alleged anti-competitive practices, inhibiting

development of rival software applications, did not
constitute redhibitory defects. LSA-C.C. art. 2520.

**\*472** Appeal from the United States District Court
for the District of Maryland, at Baltimore. J. Freder-
ick Motz, District Judge. (CA-00-2132-JFM; CA-00-
1332-MDL). **ARGUED:** John Kerry Weston, Sacks
& Weston, Philadelphia, Pennsylvania, for Appel-
lants. David Bruce Tulchin, Sullivan & Cromwell,
New York, New York, for Appellee. **ON BRIEF:** G.
Stewart Webb, Jr., Venable, L.L.P., Baltimore, Mary-
land; Thomas W. Burt, Richard J. Wallis, Steven J.
Aeschbacher, Microsoft Corporation, Redmond,
Washington; Joseph E. Neuhaus, Richard C. Pepper-
man, II, Sharon L. Nelles, Sullivan & Cromwell,
New York, New York; Charles B. Casper, Peter
Breslauer, Montgomery, McCracken, Walker &
Rhoads, L.L.P., Philadelphia, Pennsylvania, for Ap-
pellee.

Before LUTTIG and GREGORY, Circuit Judges, and
ROBERT J. CONRAD, Jr., United States District
Judge for the Western District of North Carolina,
sitting by designation.

Affirmed by unpublished PER CURIAM opinion.
Unpublished opinions are not binding precedent in
this circuit. See Local Rule 36(c). **PER CURIAM:**

**\*\*1** In November 1999, the United States District
Court for the District of Columbia entered findings of
fact in the United States Department of Justice's fed-
eral antitrust suit ("federal antitrust action") against
Microsoft Corporation ("Microsoft").[FN1] Shortly
thereafter, in January 2000, the plaintiffs, Cynthia
Aikens, Jacqueline Belfield, and Amber Cisney (col-
lectively "the plaintiffs"), sued Microsoft in Louisi-
ana state court on behalf of a putative class of Louisi-
ana residents who had **\*473** purchased Microsoft
operating system software. The plaintiffs claimed
that, because of Microsoft's anti-competitive and mo-
nopolistic practices, they had paid more for Micro-
soft's operating software than they otherwise would
have in a competitive market. Microsoft removed the
case to federal court, and the Judicial Panel on Multi-
district Litigation ("JPML") transferred the matter to
the United States District Court for the District of
Maryland ("the district court"). Subsequently, the
district court denied the plaintiffs' motion to remand
and later dismissed their causes of action for failure
to state a claim under Louisiana law. The plaintiffs

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

159 Fed.Appx. 471          Page 3
159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)), 2005-2 Trade Cases P 75,063
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)))**

appeal both rulings.

> FN1. In this proceeding, the Justice Department and various state attorneys general alleged that Microsoft had violated provisions of the Sherman Act, 15 U.S.C. § 1 *et seq.*, and section 4 of the Clayton Act, 15 U.S.C. § 15. *See United States v. Microsoft Corp.,* 84 F.Supp.2d 9, 12 (D.D.C.1999). Hereinafter, we will refer to this proceeding as "the federal antitrust action."

We affirm the district court's order denying the motion to remand, because we find that the court had jurisdiction over the claims of the class representatives based on diversity of citizenship under 28 U.S.C. § 1332 and over the claims of the other class members based on supplemental jurisdiction under 28 U.S.C. § 1367. Further, because the plaintiffs' complaint is devoid of any factual basis for the state law claims, we affirm the order of dismissal.

I.

The plaintiffs' complaint borrowed liberally from the findings of fact issued in the federal antitrust action. Specifically, the plaintiffs asserted that with the release of its Windows 98 operating system in 1998, Microsoft had achieved a monopoly over "the operating systems installed in virtually all Intel-compatible personal computers worldwide." J.A. 178. Further, the plaintiffs alleged that Microsoft was able to create and maintain this monopoly by intimidating potential competitors. As a result of these monopolistic practices, the plaintiffs asserted that Microsoft was able "to charge a substantially higher price for its software than that which could be charged in a competitive market." *Id.* In asserting these factual antitrust allegations, the plaintiffs did not cite any specific theory of liability or cause of action.

In addition to alleging antitrust violations, the plaintiffs also asserted that Microsoft was liable, under Louisiana law, for (a) bad faith breach of contract; (b) negligent misrepresentation; (c) fraudulent misrepresentation; (d) unjust enrichment; (e) breach of warranty concerning redhibitory defects; and (f) any other acts of negligence or violations of Louisiana law. J.A. 174-75. The plaintiffs offered no separate factual support for these additional state law allegations.

**\*\*2** The plaintiffs, all indirect purchasers of Microsoft software,[FN2] concluded that they were entitled to damages, "including but not limited to, the difference between the price the class members actually paid for Windows 95, Windows 98, and Internet Explorer and the amount they would have paid if Microsoft was not an illegal monopoly." J.A. 179. The plaintiffs also sought "remuneration ... of all sums by which Microsoft has been directly and indirectly unjustly enriched[,]" in addition to treble damages and reasonable attorneys fees. J.A. 180-82. In an apparent attempt to avoid federal diversity jurisdiction, the plaintiffs contended that they were not seeking recoveries in excess of $75,000 per class member. *See* J.A. 181.

> FN2. As indirect purchasers, the plaintiffs did not buy their operating system software directly from Microsoft but, instead, purchased the software from intermediaries such as retailers and wholesalers.

After the JPML transferred this action to the United States District Court for the District of Maryland in April 2000, the plaintiffs filed a motion to remand to the **\*474** state court for lack of subject matter jurisdiction. In support of the motion, the plaintiffs argued that to the extent that they had limited their prayer for damages to no more than $75,000 per class member, there was no subject matter jurisdiction on the basis of diversity of citizenship. Further, the plaintiffs argued that there was no federal question jurisdiction because their antitrust allegations relied on Louisiana law and did not involve substantial questions of federal antitrust law. J.A. 188-89.

Concluding that it had original jurisdiction over the action, the district court denied the plaintiffs' motion to remand. First, the district court asserted jurisdiction on the basis of diversity of citizenship, concluding that the plaintiffs' collective prayer for remuneration or disgorgement of profits would yield a recovery well in excess of $75,000. Alternatively, the district court held that it had federal question jurisdiction because the plaintiffs' complaint raised substantial questions of federal antitrust law. Subsequently, Microsoft moved to dismiss the unjust enrichment claim under Federal Rule Civil Procedure 12(b)(6). The district court granted this motion, finding that the unjust enrichment claim was not supported by Lou-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

isiana law. Thereafter, Microsoft moved for dismissal and/or summary judgment of the remaining state law claims. The district court granted that motion in December 2004. In so doing, the district court held that the plaintiffs had failed to raise any facts that would support those causes of action. *See* J.A. 472-73.

## II.

We first turn to the district court's order denying the plaintiffs' motion to remand. This Court reviews questions of subject matter jurisdiction de novo. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 814 (4th Cir.2004) (en banc). The burden of demonstrating subject matter jurisdiction rests on the party seeking removal. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994). Because of the underlying federalism concerns, this Court must strictly construe removal jurisdiction. *Id.* "If federal jurisdiction is doubtful, a remand is necessary." *Id.*

**\*\*3** Pursuant to section 1441 of Title 28, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a)(2000). In this case, Microsoft argues that removal was proper because the district court had original jurisdiction under 28 U.S.C. § 1331. Section 1331 grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Microsoft also contends that the district court had original jurisdiction under section 1332 of Title 28. Under that provision, federal courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different states." *Id.*§ 1332(a)(1).

## A.

[1] We believe that this court has jurisdiction over the claims of the class representatives based on diversity of citizenship under 28 U.S.C. § 1332 and over the claims of the other class members based on supplemental jurisdiction under 28 U.S.C. § 1367. It is undisputed that the parties are diverse, *see* J.A. 189, and we conclude that the amount in controversy is satis-

fied for the class representatives based on the provisions in Louisiana law **\*475** governing the allocation of attorney's fees in class actions. Because attorney's fees in this class action, which would easily exceed $75,000, are awarded pursuant to the substantive state statutes under which the plaintiffs' causes of action accrue, and because under La.Code Civ. Proc. art. 595(A), the attorney's fees would be awarded entirely to the class representatives, the amount in controversy is satisfied for the class representatives. *See In re Abbott Labs.*, 51 F.3d 524, 526-27 (5th Cir.1995) (holding, in a Louisiana antitrust class action, that the amount in controversy was satisfied for the class representatives because of article 595(A)). Supplemental jurisdiction then exists over the claims of the other class members. *See id.* at 527-29; *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, ----, 125 S.Ct. 2611, 2625, 162 L.Ed.2d 502 (2005) (ratifying *Abbott Laboratories'* holding with respect to supplemental jurisdiction).

The district court rejected this argument because it believed that in order to rely upon *Abbott Laboratories*, the plaintiffs' right to attorney's fees must derive from a substantive state statute, not just article 595(A), and it concluded that the plaintiffs did not rely on a substantive state statute that provided for attorney's fees. J.A. 446. Even assuming that the district court's narrow construction of *Abbott Laboratories* is correct, which the parties dispute, the district court's conclusion was still in error. *Abbott Laboratories* recognized, and the district court itself admitted, that Louisiana's antitrust statute awards mandatory attorney's fees as part of a prevailing plaintiff's recovery. *See Abbott Laboratories*, 51 F.3d at 526 (citing La.Rev.Stat. Ann. § 51:137); J.A. 446. Because the state antitrust statute is a substantive statute that provides for mandatory attorney's fees, the amount in controversy is satisfied under *Abbott Laboratories*.

**\*\*4** The plaintiffs have one final argument. They claim that Count 47 of their complaint limits their requested damages to $75,000 and thus diversity jurisdiction does not exist even if the attorney's fees would otherwise satisfy the amount in controversy requirement. Count 47 states:

> Plaintiffs and the plaintiff class seek monetary relief as provided by Louisiana law. Plaintiffs and each member of the class have individually incurred damages under the laws of Louisiana in an

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

159 Fed.Appx. 471

159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)), 2005-2 Trade Cases P 75,063
(Not Selected for publication in the Federal Reporter)
(Cite as: 159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)))

Page 5

amount less than $75,000. Neither of the Plaintiffs, nor any member of the class seeks damages exceeding $75,000, nor do their damages individually exceed $75,000, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder. Plaintiffs do not seek any form of "common" recovery, but rather individual recoveries not to exceed $75,000 for any class member, inclusive of interest and attorneys' fees and all relief of any nature sought hereunder.

J.A. 181. We conclude, however, that the language in Count 47 is insufficient to limit the plaintiffs' possibility of recovery to $75,000 for the purposes of determining the amount in controversy and that diversity of citizenship jurisdiction therefore exists.

It is true that a plaintiff can "resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938).* However, as courts have recognized, this dicta in *St. Paul Mercury* was premised on the notion that plaintiffs would be bound by the amount alleged in the ad damnum clause of the complaint, *see De Aguilar v. Boeing Co., 47 F.3d 1404, 1410 (5th Cir.1995)*, a premise that is no longer uniformly*476 true and that is clearly not true in Louisiana, where La.Code Civ. Proc. art. 862 provides that courts can grant relief to which a successful plaintiff is entitled, regardless of the ad damnum clause, *see Manguno v. Prudential Property & Casualty Insurance Co., 276 F.3d 720, 722 (5th Cir.2002).* This gives rise to the concern that plaintiffs will use a low ad damnum clause to avoid removal, secure in the knowledge that state law will allow them to recover more after removal would no longer be timely. *See De Aguilar, 47 F.3d at 1410.* Courts have resolved this concern by requiring plaintiffs seeking to defeat removal jurisdiction in states where the ad damnum clause at the time of filing is not legally binding to "file a binding stipulation or affidavit with their complaints." *Id. at 1412.*

The plaintiffs do not appear to dispute these general principles, but instead argue that Count 47, in which they disclaim any intent to seek more than $75,000, is not just an ad damnum clause, but is also a "judicial confession" under Louisiana law that should have the same legal effect as a *De Aguilar* stipulation-namely,

it should prevent plaintiffs from receiving more than $75,000. However, the precise language of Count 47 does not support their assertion. Count 47 alleges that plaintiffs "have individually incurred damages ... less than $75,000" and do not "seek[ ] damages exceeding $75,000." J.A. 181. It does not, however, stipulate that the plaintiffs will not *accept* more than $75,000 if the court awards it. And since Count 47 also explicitly notes that the plaintiffs "seek monetary relief as provided by Louisiana law,"*id.,* and article 862 provides that, regardless of the complaint, a court "shall grant the relief to which the party in whose favor [judgment] is rendered is entitled," it is possible that the court could award the plaintiffs more than $75,000 even though they do not seek it. Thus, the Fifth Circuit has held that, given Louisiana law, language similar to Count 47 does not suffice to defeat diversity jurisdiction. *See Manguno, 276 F.3d at 722, 724* (holding, because of article 862, that language in the complaint stating that "the amount in controversy does not exceed $75,000" and that "plaintiffs are not seeking attorneys fees" was insufficient to defeat diversity jurisdiction based on attorneys' fees).[FN3]

> FN3. Moreover, it is questionable whether Count 47 would have been sufficient even if it had disclaimed any ability to accept more than $75,000. There would remain a conflict between article 862, which grants the plaintiff the relief to which he is entitled, even if it was not demanded in the complaint, and *De Aguilar'* s holding that a binding stipulation suffices to prevent federal jurisdiction. We believe the best way to resolve this conflict may be to require that the stipulation be made outside of the text of the complaint (but of course still within the pending proceedings), so that any state laws concerning the ad damnum clause are not implicated. This position is supported by language in *De Aguilar. See 47 F.3d at 1412* (stating that plaintiffs "must file a binding stipulation or affidavit *with their complaints*" (emphasis added)).

**5 Thus, we conclude that the district court did not err in denying the motion to remand for lack of jurisdiction. The amount in controversy is satisfied because the Louisiana antitrust statute provides for mandatory attorney's fees that article 595(A) directs shall be awarded to the class representatives. Because

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Count 47 of the plaintiffs' complaint does not effectively surrender that entitlement under Louisiana law, we hold that diversity of citizenship jurisdiction exists with respect to the class representatives and that supplemental jurisdiction exists with respect to the other class members.

### B.

Because we conclude that diversity jurisdiction exists, we find it unnecessary to *477 reach the district court's alternative basis for finding original jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331.

### III.

The plaintiffs also appeal the district court's order dismissing their non-antitrust state law claims. Although the factual allegations in the complaint related entirely to Microsoft's anti-competitive and monopolistic practices, the plaintiffs also concluded that Microsoft was liable for unjust enrichment, bad faith breach of contract, misrepresentation, and breach of warranty concerning redhibitory defects.

We review the district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo. *Flood v. New Hanover County,* 125 F.3d 249, 251 (4th Cir.1997). In considering the motion to dismiss, we will accept as true the plaintiffs' factual allegations and construe them in the light most favorable to the plaintiffs. *Randall v. United States,* 30 F.3d 518, 522 (4th Cir.1994). Dismissal under Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

### A.

[2] The district court properly dismissed the plaintiffs' unjust enrichment claim. Under Louisiana Civil Code Article 2298, "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ.Code Ann. art. 2298 (West 2000). However, the unjust enrichment remedy is "subsidiary" in nature and "shall not be available if the law provides another

remedy for the impoverishment or declares a contrary rule." *Id.* Indeed, "where there is a rule of law directed to the issue, [an unjust enrichment claim] must not be allowed to defeat the purpose of said rule." *Coastal Env't Specialists, Inc. v. Chem-Lig Int'l, Inc.,* 818 So.2d 12, 19 (La.Ct.App.2001).

The plaintiffs sought unjust enrichment damages for Microsoft's "monopolistic, anti-competitive practices." J.A. 180. As indirect purchasers, however, the plaintiffs cannot sue to recover monetary damages under Louisiana antitrust law. *See Free v. Abbott Labs., Inc.,* 176 F.3d 298, 301 (5th Cir.1999) (finding that Louisiana courts would follow the federal *Illinois Brick* rule barring indirect purchaser suits for monetary damages). Therefore, to the extent that the plaintiffs cannot sue for monetary damages under Louisiana antitrust law, they cannot employ a subsidiary unjust enrichment claim to circumvent this rule. *See Coastal Env't Specialists, Inc.,* 818 So.2d at 19. Accordingly, we affirm the district court's dismissal of the unjust enrichment claim.

### B.

**6 [3] Next, the plaintiffs assert that the district court erred in dismissing their bad faith breach of contract claim. Under Article 1997 of the Louisiana Civil Code, "[a]n obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform." In order to prove bad faith, the plaintiff must demonstrate that the defendant "intentionally and maliciously [failed] to perform his obligation." *First Nat'l Bank of Jefferson Parish v. Dazet,* 656 So.2d 1110, 1113 (La.Ct.App.1995). Bad faith entails "some interested or sinister motive and implies the conscious doing of wrong for dishonest or morally questionable motives." *Pellerin Constr., Inc. v. Witco Corp.,* 169 F.Supp.2d 568, 585 (E.D.La.2001)(quoting *First Nat'l Bank of Jefferson Parish,* 656 So.2d at 1113).

We will assume, as the district court did, that Microsoft's end-user software licensing*478 agreement constituted an adequate basis in fact for a contract between the parties. However, the complaint lacked any factual allegations regarding how Microsoft breached the terms of that agreement. Further, the plaintiffs failed to allege how Microsoft acted with sinister or morally questionable motives. Given these omissions, this Court cannot infer the essential ele-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ments of a bad faith breach of contract claim. Accordingly, we hold that the district court properly dismissed this claim.

### C.

[4] The plaintiffs' negligent and fraudulent misrepresentation claims also fail. To prove negligent misrepresentation, the plaintiff must demonstrate that (1) the defendant had a legal duty to supply correct information; (2) the defendant breached that duty; and (3) the plaintiff was damaged as a result of his justifiable reliance on the defendant's misrepresentations. *See Hughes v. Goodreau, 836 So.2d 649, 663 (La.Ct.App.2002).* Fraudulent misrepresentation occurs where the defendant misrepresents or suppresses the truth with the intent "either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *Ballard's Inc. v. North Am. Land Dev. Corp., 677 So.2d 648, 650 (La.Ct.App.1996).* In order to prove fraudulent misrepresentation by silence or inaction, the plaintiff must demonstrate that the defendant had a duty to disclose. *Id.* at 650-51.

As the district court correctly concluded, the misrepresentation claims fail because the complaint is devoid of any facts that would give rise to a legal duty on the part of Microsoft to supply correct information regarding the incompatibility of its software with third-party applications. Indeed, we cannot infer the existence of such a duty from any of the plaintiffs' unrelated antitrust allegations. Therefore, we hold that the district court properly dismissed the misrepresentation claims.

### D.

[5] Finally, the plaintiffs contend that the district court erred in dismissing their redhibitory defect claim. "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use is so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased the object, if the buyer would have been aware of the vice or defect in the object." La. Civ.Code Ann. art. 2520 (West 2000). Furthermore, a plaintiff suing for a redhibitory defect "must also prove that the defect existed at the time of the sale, and that [the plaintiff] afforded the seller an opportunity to repair the de-

fect." *Anzelmo v. Pelican Computer, 892 So.2d 659, 662 (La.Ct.App.2004).*

**7 For computer software, Louisiana courts have found redhibitory defects where the product itself was defective or otherwise failed to perform to its specifications. *See Anzelmo v. Pelican Computer, 892 So.2d 659 (La.Ct.App.2004); Photo Copy, Inc. v. Software, Inc., 510 So.2d 1337, 1339-40 (La.Ct.App.1987).* In *Anzelmo,* the court concluded that a computer that experienced continual CDROM errors was "not useful for the purpose intended by the buyer" and, therefore, was defective within the meaning of *article 2520. 892 So.2d at 662.* Similarly, in *Photo Copy,* the court held that a customized software program's failure to perform specific applications requested by the buyer constituted a redhibitory defect. *510 So.2d at 1341.*

The plaintiffs contend that the defect in this case was "Microsoft's ability to maintain control over third party [sic] application software's compatibility with the Windows operating system." Appellants' Reply Br. at 21. In other words, the plaintiffs allege that the Microsoft software is defective because Microsoft's anti-*479 competitive practices inhibited the development of non-Microsoft software applications. These alleged practices do not constitute redhibitory defects within the meaning of *article 2520.* Unlike the plaintiffs in *Anzelmo* and *Photo Copy,* the plaintiffs in this case cannot identify a function or application of Microsoft's operating software that failed to perform to its specifications. Accordingly, we hold that the district court properly dismissed the redhibitory defect claim.

### IV.

For the reasons stated above, the judgments of the district court denying the plaintiffs' motion to remand and granting the defendant's motion to dismiss are affirmed.

*AFFIRMED*

C.A.4 (Md.),2005.
Aikens v. Microsoft Corp.
159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)), 2005-2 Trade Cases P 75,063

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)), 2005-2 Trade Cases P 75,063
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 159 Fed.Appx. 471, 2005 WL 3439552 (C.A.4 (Md.)))**

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a copy of **Defendant TNOW Entertainment Group, Inc.'s Response to Plaintiff's and Co-Defendant First 15, Inc.'s Joint Objection to Memorandum Opinion, Order and Recommendation of Magistrate Judge Dixon** was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey K. Peraldo
JEFFREY K. PERALDO, P.A.
500-D State Street
Greensboro, NC 27405
*Counsel for Plaintiff*

Richard L. Pinto
PINTO, COATES, KYRE & BROWN, PLLC
3203 Brassfield Rd.
Greensboro, NC 27410
*Counsel for Defendant First 15, Inc.*

A copy also was sent by First-Class Mail, postage prepaid, addressed to the following:

Roger C. Simmons
Jacob I. Weddle
GORDON & SIMMONS, LLC
603-B West Patrick Street
Frederick, MD 21701

Dated this 15th day of May, 2009.

NEAL, GERBER & EISENBERG LLP

/s/ Sarah G. Malia
Sarah G. Malia
Two North LaSalle Street, Suite 1700
Chicago, IL 60602
Tel: 312-269-8000
Fax: 312-269-1747
smalia@ngelaw.com